UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-CV-13673-RGS

CHRISTINA SILVA

v.

LUSTIG, GLASER & WILSON P.C.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

April 1, 2016

STEARNS, D.J.

Defendant Lustig, Glaser & Wilson (LG&W) was retained by Citibank, N.A., to collect a credit card debt from plaintiff Christina Silva. Silva filed this action alleging that, in collection of the debt, LG&W violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, "by falsely representing the character, amount or legal status of [her] alleged debt [Count I and Count II]; . . . continuing to contact [her] without having first provided verification of the debt, after having received written communication from her disputing the debt [Count III]; . . . [and] by attempting to collect an amount from [her] not permitted by law, including by retroactively charging interest to the Debt without the legal right to do so. [Count IV]" Compl. ¶¶ 33, 44, 50. Silva also insists that Citibank sold the

debt to LG&W who "retroactively assessed interest on the Debt" after Citibank had "charged off the Debt and ceased attempting to collect the Debt from [Silva.]" Compl. ¶¶ 21-22, 27-28.

LG&W filed an Answer and Counterclaim against Silva asserting abuse of process – that she instituted this lawsuit as leverage in Citibank's collection litigation against her. LG&W has moved to dismiss Silva's claims as barred by the statute of limitations, arguing that its validation of the debt was received by Silva in May of 2014, and that she filed this lawsuit on October 29, 2015, outside FDCPA's one-year statute of limitations. LG&W also asserts that the Complaint fails to state an actionable claim under the FDCPA – that the documentation LG&W provided to Silva (attached to its Answer) is inconsistent with the recitation of facts contained in the Complaint. Pursuant to Fed. R. Civ. P. 12(c), LG&W also moves for judgment on the pleadings on its counterclaim.

BACKGROUND

In its efforts to collect a debt of behalf of Citibank, on December 28, 2011, LG&W sent Silva a letter identifying itself as a debt collector and setting out, as required by the FDCPA, the amount of her debt – $6,002.39; and the name of the creditor to whom the debt is owed – Citibank, N.A.; along with Silva's account number and merchant information. The notice also provided

Silva with a toll-free number to "contact [LG&W] at your first opportunity so we can work together to arrive at a reasonable payment program if you are unable to pay the full balance due on your account at this time." Answer - Ex. B. The letter also advised Silva of her right to dispute and/or request verification of the debt within thirty days. LG&W's communication specifically included the following language:

> NOTICE OF IMPORTANT RIGHTS
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose. If you do not dispute the validity of this debt, or any portion thereof, within thirty days after receiving this letter, we will assume it is valid. If you do dispute the validity of this debt, or any portion thereof, in writing, within the thirty-day period, we will obtain verification of the debt or a copy of any judgment and will mail a copy of such verification or judgment to you. At your request in writing, within the thirty day period, we will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector.

Def.'s Answer - Ex. A at 3.

On January 21, 2012, Silva responded to LG&W that she was "not refus[ing] to pay [and] would like to resolve this matter at the earliest possible time" but requested verification "that I owe you this purported debt and why." *Id.* - Ex. E at 3. On February 27, 2012, Silva again contacted LG&W with a self-styled NOTICE OF FAULT/NON-PERFORMANCE advising that it had failed to "timely respond" to her "demand for verification" resulting in a "self-executing contract" with a fee schedule

corresponding with any future collection attempts by LG&W or any negative consumer credit reporting arising from the debt.  *Id.* at 5-6.

LG&W did not contact Silva again until May 13, 2014.  LG&W asked Silva to "accept this letter as our response to your request for debt validation."  *Id.* - Ex. C.  The response included Silva's account information, including her balance, date of her last payment, and attached copies of monthly account summaries (from May of 2007 to January 6, 2012).  On May 27, 2014, LG&W filed suit on behalf of Citibank against Silva in the Hingham District court demanding $6002.39, plus interest on her outstanding credit card debt.  The docket indicates that Silva was served with that Complaint on June 9, 2014.

Silva replied to LG&W's validation letter on June 4, 2014, stating that she was "refusing for cause . . . [the] purport[ed] validat[ion of] a debt [because] this matter has been closed for over two years."  *Id.* - Ex. D at 2.  She attached a "True Bill for $306,000", the amount Silva claimed LG&W owed her for its breach of several elements of her unilaterally-imposed contract.  *Id.* at 3.

On July 29, 2014 Silva sent LG&W an "Intent to Sue," which it acknowledged on August 4, 2014.  In its response, LG&W notified Silva that her claims were factually inaccurate and, under the FDCPA, time-barred.

Silva followed on August 5, 2014 with another "Notice and Demand to Validate Debt Claim." *Id.* - Ex. E.  LG&W replied on August 7, 2014, that it had previously provided Silva validation on May 13, 2014.  Notwithstanding, LG&W's response included all of the previously provided, FDCPA-mandated information, including a duplication of the account statements "which show the balance accrual from $0 to the complaint balance of $6002.39."  *Id.* - Ex. G1 at 2.

On September 12, 2014, Silva provided LG&W a draft Complaint alleging FDCPA claims that she intended to file against it in federal court. LG&W responded on September 16, 2014, that the facts in Silva's Complaint did not comport with Citibank's file regarding her debt (pointing to the documentation that LG&W previously had provided to her).  LG&W also refuted Silva's assertion that it had bought her debt, stating that it was hired by Citibank "to handle the collection of an account which you allegedly owe to the bank."  *Id.* - Ex. I.  Silva commenced her initial suit against LG&W in federal court on September 22, 2014.  *See* 14-cv-13695-WGY.  Judge Young ultimately dismissed the case on January 21, 2015, after denying Silva's motion to proceed in forma pauperis, her subsequent motion for reconsideration, and her ensuing failure to pay the filing fee.  *Id.* at Dkt. #9, #11.  Silva filed this identical case on October 29, 2015.  LG&W waived service

and filed an Answer and Counterclaim on November 13, 2015, attaching 802 pages of exhibits chronicling the parties' tug-of-war.

On March 4, 2016, Judge Heather Bradley of the Hingham District Court rendered a decision in the matter of *Citibank, N.A. v. Christina Silva*, Docket No. 1458-cv-307.  *See* Dkt. #24 - Ex. A.  After a three-day bench trial which commenced on July 30, 2015, and concluded on September 3, 2015, Judge Bradley found that Silva had breached her credit-card contract with Citibank (who, Judge Brady found, also had established a right of recovery under quantum meruit).  While Silva testified that "she had disputed the debt since 2011 when she started receiving correspondence about the debt," Judge Bradley found Silva "failed to provide sufficient credible evidence to contest the existence of the agreement between the parties or the amount the plaintiff established that the defendant owed to Citibank at the time the credit card was 'charged off.'"  *Id.* at 3.  Judge Bradley awarded Citibank $6002.39 in damages; $1,285.59 in prejudgment interest; and $240.90 in costs.

## DISCUSSION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

The FDCPA contains an explicit one-year statute of limitations -- a suit must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  In her Complaint, Silva asserts that she requested verification on August 7, 2014, that LG&W "failed to send verification" but "continued to contact [her] for the purpose of collecting the Debt despite having failed to first provide [her] with verification of the Debt."  Compl. ¶¶ 19-20.  Significantly, Silva's Complaint makes no mention of her January 21, 2012 verification request, LG&W's response, or any of the previous back-and-forth between the parties.  The FDCPA's one year statute of limitations

began to run on Silva's claims in Counts I and II upon her receipt of LG&W's December 28, 2011 letter – the limitations period on Counts III and IV commenced upon her receipt of LG&W's May 13, 2014 response (which attached copies of Citibank's billing) to her validation request.  *See Simard v. LVNV Funding, LLC*, 2011 WL 4543956, at 3 (D. Mass. Sept. 9, 2011) ("Under a continuing violation theory, each new communication from the debt collector is viewed as a separate violation and a new statute of limitations period accrues.  However, if the new communication concerns an old claim, the new communication is subject to the statute of limitations period for the old claim.").  As Silva failed to institute this action until October 29, 2015, her claims under the FDCPA are time-barred.

Even if Silva's suit was timely filed, LG&W's communications to Silva comported with the FDCPA.  Perhaps dilatory, LG&W's May 13, 2014 letter to Silva, nonetheless, complied with the notice requirements of the FDCPA.  A notice sent in conformity with 15 U.S.C. § 1692g must include:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

>and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g.  LG&W's Notice fully complied with the FDCPA.  The letter plainly stated that, according to LG&W's records, Silva owed $6,002.39 to Citibank.  The "Notice of Important Rights" on the back of its letter clearly was designed to comply with the FDCPA by informing Silva of her statutory rights to dispute and ask for verification regarding the debt within thirty days.

While Silva "refus[ed] for cause" the May 14, 2014 validation letter, it is undisputed that, as required under the statute, LG&W "ceased collection of the debt" during the period between Silva's January 21, 2012 request for verification, and LG&W's May 13, 2014 response.  Although Silva assigns a thirty-day response period to her verification request (*see* Ex. D at 7 - Feb. 27, 2012 letter entitled NOTICE OF FAULT), the statute is silent regarding the time in which the collector must respond.[1]  Accordingly, even if Silva's claims were timely filed, in the circumstances of this case she fails to state a claim under the FDCPA.

---

[1] Any reference to a "thirty-day period" in the FDCPA regards the time in which the debtor may dispute the bill, and the collector's obligation to inform the debtor of that thirty-day window.  See 15 U.S.C. § 1692g(a)(3).

LG&W also moves for judgment on its counterclaim against Silva for abuse of process.

> The two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective. . . . [A]buse of process covers the allegedly improper use of individual legal procedures *after* a suit has been filed properly. Typical abuse of process cases involve misuse of such procedures as discovery, . . . and attachment.  The abuse tort often is given a wider berth, however, and courts typically will recognize such a claim, regardless of timing, if a plaintiff can show an improper use of process "for an immediate purpose other than that for which it is designed and intended,"' Restatement (2d) of Torts § 682, at 475 (1977). . . . Filing of a lawsuit is a "regular" use of process, and therefore may not on its own fulfill the requirement of an abusive act, even if the decision to sue was influenced by a wrongful motive, purpose or intent. . . .  And, although wrongful motive in the context of an abuse of process claim may be inferred from an improper act, the reverse is not true.

*Simon v. Navon*, 71 F.3d 9, 15-16 (1st Cir. 1995) (setting out elements of malicious prosecution and abuse of process); *see also Millennium Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636 (2010).  LG&W has failed to adequately plead facts supporting an abuse of process claim – "an act in the use of process other than such as would be proper in the regular prosecution of the charge."  *Simon,* 71 F.3d at 17.  LG&W avers that "Silva has brought this lawsuit in federal court against LGW solely for the purpose of influencing state court litigation brought against Silva by LGW on behalf of its client Citibank." Def.'s Answer ¶ 45.  Significantly LG&W is not a party to the state court action.  This is a pro se consumer's lawsuit pleading a legitimate subject

matter – four perceived violations of a federal statute by LG&W in its timing and handling of the collection process. Accordingly, the motion for judgment on the pleadings will be denied, and the court dismisses the counterclaim as inadequately pled.

## ORDER

For the reasons previously stated, defendant's motion to dismiss Silva's claims against it under the FDCPA are <u>ALLOWED</u>. Defendant's motion for judgment pursuant to Fed. R. Civ. P. 12(c) on its counterclaim is <u>DENIED</u>, and the counterclaim is dismissed as inadequately pled. The Clerk will close the case.

SO ORDERED.

/s/ Richard G. Stearns  
UNITED STATES DISTRICT JUDGE